# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| _____ ) | |
| ZACHARIA A. ALARAYSHI, *et al.*  ) | |
|  ) | |
| Plaintiffs,  ) | |
|  ) | |
| v.  ) | 2:23-cv-12599-SDK-APP |
|  ) | Hon. Shalina D. Kumar |
|  ) | Mag. Judge Anthony P. Patti |
|  ) | |
| ANTHONY BLINKEN, *et al.*,  ) | |
|  ) | |
| Defendants.  ) | |
| _____ ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND...................................................................................................4

I.     AUTHORITIES CONCERNING EVACUATIONS ...............................4

II.    PLAINTIFFS' COMPLAINT AND THE TRO MOTION ..............................6

LEGAL STANDARD ...........................................................................................7

ARGUMENT ........................................................................................................8

I.     PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS
       OF THEIR CLAIMS...............................................................................8

       A.     Plaintiffs' Claims Raise A Nonjusticiable Political Question .....................8

       B.     The Government's Evacuation Decisions Are Unreviewable
              Under the APA..............................................................................14

       C.     Plaintiffs Are Unlikely to Succeed on Their Failure to Act or
              Mandamus Claim ..........................................................................17

       D.     Plaintiffs Are Unlikely to Succeed on Their Arbitrary and
              Capricious Claim ...........................................................................18

       E.     Plaintiffs Are Unlikely to Succeed on Their Equal Protection
              Claim ............................................................................................22

III.   THE OTHER INJUNCTION FACTORS WEIGH AGAINST
       ISSUANCE OF A TRO..........................................................................23

CONCLUSION ....................................................................................................25

## TABLE OF AUTHORITIES

### Cases

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ................................................................................12

*Ana Leon T. v. Fed. Reserve Bank*,
   823 F.2d 928 (6th Cir. 1987) ..................................................................22

*Baker v. Carr*,
   369 U.S. 186 (1962) ..................................................................................9

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................19

*Carson v. U.S. Off. of Special Couns.*,
   633 F.3d 487 (6th Cir. 2011) ..................................................................17

*Chicago & Southern Air Lines v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ................................................................................12

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) ..................................................................22

*Curran v. Laird*,
   420 F.2d 122 (D.C. Cir. 1969) ................................................................15

*Daunt v. Benson*,
   956 F.3d 396 (6th Cir. 2020) ....................................................................8

*Dunn v. Retail Clerks Int'l Ass'n, AFL-CIO, Loc., 1529*,
   299 F.2d 873 (6th Cir. 1962) ....................................................................8

*El-Shifa Pharm. Indus. Co. v. United States*,
   607 F.3d 836 (D.C. Cir. 2010) ..................................................................9

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*,
   857 F.3d 913 (D.C. Cir. 2017) ................................................................20

*FERC v. Elec. Power Supply Ass'n*,
   577 U.S. 260 (2016) ................................................................................21

*Fieger v. Gonzales*,
   No. 07-CV-10533-DT, 2007 WL 2351006 (E.D. Mich. Aug. 15, 2007) ...................17

*Gonzales v. Nat'l Bd. of Med. Exam'rs*,
   225 F.3d 620 (6th Cir. 2000) .......................................................................8

*Haig v. Agee*,
   453 U.S. 280 (1981) ...................................................................................11

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) ...................................................................................11

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................................................15

*Home-Owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.*,
   673 F. App'x 500 (6th Cir. 2016) ..............................................................14

*Hondros v. U.S. Civ. Serv. Comm'n*,
   720 F.2d 278 (3d Cir. 1983) .......................................................................15

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
   478 U.S. 221 (1986) .....................................................................................9

*Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*,
   104 F.3d 1349 (D.C. Cir. 1997) .................................................................15

*Liberty Coins, LLC v. Goodman*,
   748 F.3d 682 (6th Cir. 2014) .......................................................................8

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ...................................................................................16

*Luftig v. McNamara*,
   373 F.2d 664 (D.C. Cir. 1967) ...................................................................12

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) .....................................................................................8

*Mobarez v. Kerry*,
   187 F. Supp. 3d 85 (D.D.C. 2016) .......................................................*passim*

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................20, 21

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
   711 F.3d 662 (6th Cir. 2013) .....................................................................21

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................................24

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ...................................................................................18

*Oetjen v. Cent. Leather Co.*,
    246 U.S. 297 (1918) .................................................................................11

*Ohio Republican Party v. Brunner*,
    543 F.3d 357 (6th Cir. 2008) .....................................................................7

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) .........................................................14, 15

*Sadi v. Obama*,
    No. 15-11314, 2015 WL 3605106 (E.D. Mich. June 8, 2015) ...........*passim*

*Scalise v. Thornburgh*,
    891 F.2d 640 (7th Cir. 1989) ...................................................................15

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ............................................................9, 11

*Thompson v. DeWine*,
    976 F.3d 610 (6th Cir. 2020) .....................................................................8

*Tomaszczuk v. Whitaker*,
    909 F.3d 159 (6th Cir. 2018) ...................................................................22

*Trudeau v. Fed. Trade Comm'n*,
    456 F.3d 178 (D.C. Cir. 2006) .................................................................18

*United States v. Curtiss-Wright Exp. Corp.*,
    299 U.S. 304 (1936) .................................................................................11

*United States v. Munoz-Flores*,
    495 U.S. 385 (1990) .................................................................................25

*United States v. Vaello Madero*,
    596 U.S. 159 (2022) .................................................................................22

*Valenti v. Snyder*,
    853 F. Supp. 2d 691 (E.D. Mich. 2012) ...........................................7, 8, 24

*Williams v. Int'l Paper Co.*,
    227 F.3d 706 (6th Cir. 2000) ...................................................................21

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ................................................................................ 7, 24

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ........................................................................... 9, 12

## U.S. Constitution

U.S. Const. art. I, § 2, cl. 1 ...........................................................................12

## Statutes

5 U.S.C. § 701 ...............................................................................................15

5 U.S.C. § 702 ...............................................................................................14

5 U.S.C. § 704 ...............................................................................................18

5 U.S.C. § 706 ...............................................................................6, 7, 17, 18

22 U.S.C. § 2671 ..................................................................................4, 13, 16

22 U.S.C. § 4802 ..................................................................................4, 13, 16

28 U.S.C. § 1361 ...........................................................................................17

42 U.S.C. § 1983 ...........................................................................................22

## Regulations

Exec. Order No. 12656,
    53 Fed. Reg. 47491 (Nov. 18, 1988) ......................................................5

Exec. Order No. 13074,
    63 Fed. Reg. 7277 (Feb. 9, 1988) ...................................................... 5, 13

## Other Authorities

1 RECOMMENDATIONS AND REPORTS OF THE ADMINISTRATIVE CONFERENCE
    191, 225 .................................................................................................14

President Biden, (@POTUS), X (Oct. 12, 2023, 12.54 PM),
    https://twitter.com/POTUS/status/1712512081449091175 ......................................1

President Biden, (@POTUS), X (Oct. 14, 2023, 9.24 AM),
    https://twitter.com/POTUS/status/1713184081549173046 ......................................1

U.S. Embassy in Israel, Security Alert #9,
    https://il.usembassy.gov/security-alert-9/ (Oct. 14, 2023) ..........................................2

U.S. State Dep't, Press Statement,
    https://www.state.gov/u-s-Government-to-assist-u-s-citizens-in-departing-
    israel/ (Oct. 12, 2023) ........................................................................................................1

U.S. State Dep't,
    https://www.state.gov/secretary-blinkens-travel-to-israel-jordan-qatar-saudi-arabia-
    the-united-arab-emirates-and-egypt/ (Oct. 12, 2023)..................................................10

## INTRODUCTION

Plaintiffs, U.S. residents of Palestinian origin and civil rights advocacy organizations, filed this suit to compel the Secretaries of State and Defense to take all necessary measures to evacuate U.S. citizens from the active war zone in the Gaza Strip. They seek a temporary restraining order ("TRO"), which is identical to the final relief requested in the Complaint.  The Court should deny this motion because the suit presents a nonjusticiable political question precluding judicial review and because Plaintiffs are not entitled to the extraordinary relief of a mandatory injunction.

Since Hamas's surprise terrorist attack on Israel less than two weeks ago, many nations, including the United States, have been evacuating their citizens from Israel.[1] The President has made clear that he has "no higher priority than the safety of Americans at home and around the world."[2]  The United States is working with the Governments of Israel, Egypt, and Jordan, as well as the United Nations, "to surge support to ease the humanitarian consequences of Hamas's attack," among other things.[3]  Gaza is now an active war zone subject to extensive land, sea, and air access restrictions.  Nevertheless, the United States is actively working to secure the safe exit

---

[1] U.S. State Dep't, Press Statement,  https://www.state.gov/u-s-Government-to-assist-u-s-citizens-in-departing-israel/ (Oct. 12. 2023).

[2] President Biden, (@POTUS), X (Oct. 12, 2023, 12.54 PM), https://twitter.com/POTUS/status/1712512081449091175.

[3] President Biden, (@POTUS), X (Oct. 14, 2023, 9.24 AM), https://twitter.com/POTUS/status/1713184081549173046.

of its citizens from Gaza through negotiations with state actors in the region.[4]  The United States wants the safe return of its citizens, and the Court should not accept Plaintiffs' invitation to intervene and direct the Government's efforts.  Strategic decisions about whether to conduct an evacuation operation in a war zone are constitutionally committed to the political branches of the Government.  There are no judicially manageable standards for the Court to determine whether the Government has breached any purported duty of evacuation, and Plaintiffs' suit presents a nonjusticiable political question.  Two district courts considering similar challenges concerning the evacuation of Americans from Yemen have come to this very conclusion.  *See Mobarez v. Kerry*, 187 F. Supp. 3d 85 (D.D.C. 2016) (Ketanji Brown Jackson, J.); *Sadi v. Obama*, No. 15-11314, 2015 WL 3605106, *4–*7 (E.D. Mich. June 8, 2015) (Sean Cox, J.).

For many of the same reasons that Plaintiffs' claims present a political question, Administrative Procedure Act ("APA") review is unavailable because the decision

---

[4]  *See* Ex. 1, F. Farrow, "US 'Dedicated' to Helping Americans Leave Gaza Through Egypt amid Israel-Hamas War:  Sullivan," ABC News (Oct. 15, 2023), (quoting National Security Advisor Jake Sullivan as stating, "We have been working around the clock.  We have an entire dedicated team that is working on nothing but this: helping American citizens who are in Gaza be able to get safe passage through the border crossing to Egypt"); *see also* U.S. Embassy in Israel, Security Alert #9, https://il.usembassy.gov/security-alert-9/ (Oct. 14, 2023 ) (discussing that the "conflict between Israel and Hamas is ongoing, making identifying departure options for U.S. citizens [from Gaza] complex," that the Government is "working on potential options for departure from Gaza for U.S. citizens," and that "U.S. government officials [are] working 24/7 to try to assist").

concerning the evacuation of U.S. citizens from war zones is committed to agency discretion. Even if review were available, Plaintiffs' APA claims, whether characterized as challenges to agency action or inaction, are unlikely to succeed. Plaintiffs have identified no legal authority requiring the Government to carry out an evacuation of U.S. citizens in Gaza, nor have they specified any final agency action regarding such an evacuation.

Moreover, Plaintiffs have no likelihood of success on their equal protection claim. Neither Plaintiffs' Complaint nor their TRO motion provides any basis to find disparate treatment—the threshold element of an equal protection claim. U.S. citizens trapped in Gaza are not similarly situated to those in Israel due to a real difference in armed hostilities, and, among other practical limitations, the air, land, and sea access restrictions of Gaza. Nor is there any basis to find that any alleged differential treatment of U.S. citizens in Gaza is due to their Palestinian origin. Plaintiffs' conclusory allegations of disparate treatment do not state a claim, let alone show a likelihood of success on the merits of an equal protection claim.

Finally, the balancing of harms tips against the issuance of a TRO. Plaintiffs cannot show—and the Court is ill-equipped to determine—whether it is presently possible to safely evacuate U.S. citizens from Gaza. An order compelling the Government to conduct an evacuation operation now could subject Plaintiffs, other U.S. citizens in Gaza, and those participating in such efforts to grave danger. Such an order could also undermine the foreign policy objectives of the United States, in the

midst of ongoing sensitive diplomatic efforts.  The Constitution squarely commits decisions about the safety and welfare of Americans in foreign conflict zones to the Executive Branch.  Involving the Court in this fluid and complex situation would violate separation of powers principles and is decidedly against the public interest.

**BACKGROUND**

## I.   AUTHORITIES CONCERNING EVACUATIONS

Plaintiffs cite no authority for their claimed entitlement to "a swift, accommodating, and reasonable evacuation from Gaza."  ECF No. 1, PageID.11, Compl., ¶ 39; *see also* ECF No. 1-1, PageID.24, ECF No. 10, PageID.70, TRO Mot. ¶ 9 (referring to defendants' alleged "duty" to rescue U.S. citizens).  In fact, there is none. The relevant statutes governing evacuations abroad concern only the planning, preparation, and use of resources.  Specifically, the Secretary of State is charged with "develop[ing] and implement[ing] policies and programs to provide for the safe and efficient evacuation of United States Government personnel, dependents, and private United States citizens when their lives are endangered."  22 U.S.C. § 4802(b).  This responsibility involves developing a model contingency plan, a mechanism to contact U.S. citizens, and a plan to coordinate communications regarding the whereabouts of U.S. citizens, as well as assessing transportation and communications resources in the evacuation areas.  *Id.* § 4802(b)(1)–(4).  And in case of evacuation, the Secretary of State is authorized to "make expenditures" subject to certain conditions, including that any expenditure must "serve to further the realization of foreign policy objectives."  *Id.*

4

§ 2671(a)(1), (b)(1)(A).  These statutes do not dictate the conditions under which an evacuation order must be issued, and any decision about whether and when to conduct an evacuation is left to the discretion of the Executive Branch.

Other authorities similarly do not specify when an evacuation must occur. Executive Order 12656 requires the Secretary of State, "under the direction of the President," to "[p]repare to carry out Department of State responsibilities in the conduct of the foreign relations of the United States during national security emergencies . . . including . . . [p]rotection or evacuation of United States citizens and nationals abroad."  Exec. Order No. 12656 § 1301(2)(f), 53 Fed. Reg. 47491, 47503-04 (Nov. 18, 1988).  In addition, the Secretary of Defense is to advise and assist the Secretary of State "in planning for the protection, evacuation, and repatriation of United States citizens in threatened areas overseas."  *Id.* § 502(2), 53 Fed. Reg. at 47498. Executive Order 13074, which amends Executive Order 12656, adds that the Secretary of Defense is "responsible for the deployment and use of military forces for the protection of" U.S. citizens, U.S. nationals, and other designated persons when evacuating them from "threatened areas overseas."  Exec. Order No. 13074, 63 Fed. Reg. 7277 (Feb. 9, 1988).  A subsequent Memorandum of Agreement ("MOA"), which sets forth the State and Defense Departments' respective roles and responsibilities regarding the protection and evacuation of U.S. citizens, confirms that an evacuation decision is entirely discretionary and involves complex considerations.  *See* MOA (July 14, 1998) (attached as Ex. 2).  For example, the MOA provides that while "[t]he safety

5

of U.S. Citizens is of paramount concern . . . successful evacuation operations must take into account risks for evacuees and U.S. forces," MOA, Appendix 1, and should be carried out only when "necessary and feasible," MOA, A.1.

## II.    PLAINTIFFS' COMPLAINT AND THE TRO MOTION

On October 13, 2023, in the midst of these daunting, fluid circumstances, two individuals and two non-profit organizations filed an Emergency Complaint for Mandamus with Request for Injunctive Relief against the Secretaries of State and Defense.  ECF No. 1, PageID.1–14, Compl.  The individual Plaintiffs, Zakaria A. Alarayshi and Laila K. Alarayshi, allege that they are U.S. citizens of Palestinian origin who are currently trapped in the Gaza Strip under grave and dangerous circumstances—the Gaza Strip is an "active war zone" subject to "naval blockade," with its land borders with Egypt and Israel closed.  *Id.*, PageID.2, 5, 6, ¶¶ 3, 12, 18.  The nonprofit organization Plaintiffs, the Arab Civil Rights League ("ACRL") and the American-Arab Anti-Discrimination Committee ("ADC"), allege that some of their U.S. citizen members are similarly trapped in the Gaza Strip.  *Id.*, PageID.2–3, ¶¶ 4–6.

Count I of the Complaint raises an equal protection claim, alleging that Palestinian Americans in Gaza are being treated disparately from U.S. citizens in Israel, whom the Government is trying to evacuate, and from U.S. citizens who in the past were evacuated from other war zones.  *Id.*, PageID.9–10, ¶¶ 27–34 (citing evacuations undertaken in prior years in other countries).  Count Two asserts a challenge to arbitrary and capricious agency action under the APA, 5 U.S.C. § 706(2)(A), but also alleges that

the Government has unlawfully withheld and unreasonably delayed taking action to evacuate its citizens, which is a separate cause of action the APA, 5 U.S.C. § 706(1). ECF No. 1, PageID.10-12, Compl. ¶¶ 35–40.  Count III merely identifies the requested injunctive relief.  *Id.* PageID.12–13, ¶¶ 40–48.  The Complaint seeks an order compelling the Government, "in the most expeditious manner available," to "use all resources at their disposal that are necessary and available . . . to evacuate U.S. citizens from Gaza and return them safely to" either the United States or another country outside of the war zone.  *Id.*, PageID.12–14.

Plaintiffs also appended to their complaint a TRO motion, ECF No. 1–1, PageID.22–27, which they have refiled, ECF No. 10, PageID.68-71.  Besides describing the Alarayshis' efforts to obtain safe passage out of Gaza, *id.*, PageID.69, TRO ¶¶ 2–4, the motion adds that the Government should have issued a Noncombatant Evacuation Operation order and that the Government's failure to do so is arbitrary and capricious, *id.*, PageID.69–70, ¶ 7.

## LEGAL STANDARD

Temporary restraining orders and preliminary injunctions are considered under the same standard.  *Valenti v. Snyder*, 853 F. Supp. 2d 691, 694 (E.D. Mich. 2012) (citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008)).  In both contexts, the relief sought "is an extraordinary remedy never awarded as of right."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs bear the burden of establishing "by a clear showing" that (1) they have a substantial likelihood of success on the merits; (2) they

will suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2512 (2021).   Where the Federal Government is the defendant, the last two factors merge. *Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020). "[T]he likelihood of success on the merits often will be the determinative factor." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (citations omitted); *Valenti*, 853 F. Supp. 2d at 694 ("No single factor is controlling of the outcome, although if 'there is simply no likelihood of success on the merits' that is usually 'fatal.'" (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).   The Sixth Circuit has cautioned against the entry of mandatory injunctions that would alter the status quo and "finally dispose of the case on its merits." *Dunn v. Retail Clerks Int'l Ass'n, AFL-CIO, Loc. 1529*, 299 F.2d 873, 874 (6th Cir. 1962).

## ARGUMENT

### I.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS[5]

#### A. Plaintiffs' Claims Raise A Nonjusticiable Political Question

This Court lacks authority to decide the current dispute because, as two courts have found in strikingly similar circumstances, it presents a "[q]uintessential [p]olitical

---

[5] Defendants do not challenge the organizational Plaintiffs' standing for purposes of this emergency motion but reserve their right to raise this jurisdictional argument if additional motion practice is required later.

[q]uestion." *Mobarez*, 187 F. Supp. 3d at 92; *see Sadi*, 2015 WL 3605106, at *7. The

political question doctrine, which is premised on separation of powers principles,

"recognizes that 'some [q]uestions, in their nature political, are beyond the power of the

courts to resolve.'" *Mobarez*, 187 F. Supp. 3d at 90 (quoting *El-Shifa Pharm. Indus. Co. v.*

*United States*, 607 F. 3d 836, 840 (D.C. Cir. 2010) (en banc)). Accordingly, the doctrine

"excludes from judicial review those controversies which revolve around policy choices

and value determinations constitutionally committed for resolution to the halls of

Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean*

*Soc'y*, 478 U.S. 221, 230 (1986). A controversy "involves a political question . . . where

there is 'a textually demonstrable constitutional commitment of the issue to a

coordinate political department; *or* a lack of judicially discoverable and manageable

standards for resolving it.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (citation

omitted) (emphasis added); *see also Baker v. Carr*, 369 U.S. 186 (1962) (identifying six

factors to determine whether a case presents a political question).[6] Suits seeking to

---

[6] *Zivotofsky* mentions only two of the six factors initially set forth in *Baker*. The other four factors are: the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion or nonjudicial discretion; the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; an unusual need for unquestioning adherence to a political decision already made; and the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Baker*, 369 U.S. at 217. It is unnecessary to assess the latter four factors because this case plainly satisfies the first two, and the satisfaction of one factor precludes judicial review. *See id.*; *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) ("To find a political question, we need only conclude that one [of the six *Baker*] factor[s] is present, not all.").

compel the Government to conduct complex evacuation operations overseas fall squarely within the political question doctrine. *Mobarez*, 187 F. Supp. 3d at 92; *Sadi*, 2015 WL 3605106, at *7.

First, Plaintiffs' claims involve matters that are textually committed to the political branches of the Government. Plaintiffs argue that this Court should compel the Executive Branch to use all "necessary" and "available" means, including "the deployment of military ships, vessels and airplanes," to evacuate U.S. citizens from Gaza. ECF No. 1, PageID.13–14. That is an invitation to override the Executive Branch's discretionary determinations in the midst of ongoing diplomatic negotiations and active hostilities on the ground. Following Hamas's recent terrorist attack on Israel and in the face of an escalating humanitarian crisis, the President and the Secretary of State have been engaged in sensitive diplomatic discussions to advance the foreign policy and national security interests of the United States, which include addressing the safety and security of its citizens. The Secretary of State, for example, traveled to Israel, Jordan, Qatar, Bahrain, Saudi Arabia, the United Arab Emirates, and Egypt to reiterate the United States' "condemnation of the terrorist attacks in Israel," "reaffirm the United States' solidarity with the Government and people of Israel," and to "engage regional partners on efforts to help prevent the conflict from spreading, secure the immediate and safe release of hostages, and identify mechanisms for the protection of civilians."[7]

---

[7] U.S. State Dep't, https://www.state.gov/secretary-blinkens-travel-to-israel-jordan-qatar-saudi-arabia-the-united-arab-emirates-and-egypt/ (Oct. 12, 2023).

Whether, when, and how to evacuate U.S. citizens in Gaza is one of many objectives the Executive Branch is currently pursuing amidst the rapidly developing geopolitical situation and active military operations in Gaza.[8] They are matters "intimately related to foreign policy and national security," *Haig v. Agee*, 453 U.S. 280, 292 (1981), and thus, are "largely immune from judicial inquiry or interference," *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952); *see also Haig*, 453 U.S. at 292 (foreign policy and national security matters are "rarely proper subjects for judicial intervention").

This is so because "[t]he conduct of the foreign relations of our Government is committed by the Constitution to the executive and legislative—'the political'—departments of the government." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918); *see also Schneider*, 412 F.3d at 194 (discussing the Constitution's allocation of foreign affairs and national security powers to the legislative and execution branches). It has long been recognized that "[t]he President is the sole organ of the nation in its external relations, and its sole representative with foreign nations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) (citation omitted); *see also Am. Ins. Ass'n v.*

---

[8] *See, e.g.*, Ex. 1, *supra* n.4, (quoting National Security Advisor Sullivan as stating, "Our goal is to ensure that every American who is in Gaza has safe passage out, and we will not rest until that happens"); *see also* Ex. 3, J. Slater, S. Schmidt, K. DeYoung, "Americans Remain Stuck in Gaza as U.S. Evacuation Deal Falters," Wash. Post (Oct. 14, 2023) (reporting that the Government had negotiated a deal to allow U.S. citizens to leave Gaza and cross into Egypt during a five-hour window, but that Palestinian and Egyptian officials had failed to communicate about opening it, and that by day's end, no one had been able to cross); Ex. 4, C. Deng, S. Said, and V. Salama, "Egypt Weighs Letting in Palestinians from Gaza," WSJ (Oct. 15, 2023).

*Garamendi*, 539 U.S. 396, 414 (2003) ("historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations'" (citation omitted)).  When diplomacy fails, it is also the President who has the constitutionally vested authority as Commander in Chief to deploy our military.  *See* U.S. Const. art. I, § 2, cl. 1; *Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 109–10 (1948).

  To address Plaintiffs' claims here, therefore, would contravene the political question doctrine, straying far beyond the "familiar judicial exercise" of how a statute should be interpreted or whether it is constitutional.  *Zivotofsky*, 566 U.S. at 196; *see also Lustig v. McNamara*, 373 F.2d 664, 665-66 (D.C. Cir. 1967) ("It is difficult to think of an area less suited for judicial action than … the use and disposition of military power; these matters are plainly the exclusive province of Congress and the Executive.").  In other words, as then-Judge Ketanji Brown Jackson put it, "it is effectively impossible to decide" whether the Government breached its alleged evacuation duties "without invading 'a textually demonstrable constitutional commitment' to another branch (the first *Baker* test)."  *Mobarez* 187 F. Supp. 3d at 92; *see also Sadi*, 2015 WL 3605106, at *6 ("These fact-based judgments have been committed to the discretion of the Executive branch, to be made on a case-by-case basis").

  Second, there are no judicially manageable standards for determining whether the Government has breached any alleged duty to conduct an evacuation operation under the circumstances here.  As discussed, no legal authority provides any standards

to determine whether and when an evacuation must occur.  The relevant statutes and Executive Orders merely concern planning, preparation, and resource commitments, including, for example, the condition that expenditure for evacuation must "serve to further the realization of foreign policy objectives."  22 U.S.C. § 2671(b)(1)(A).  Nor does the MOA between the State and Defense Departments on evacuations offer any such standards, even assuming the MOA has the force of law, which it does not.

The relevant statutes, Executive Orders, and the MOA do reflect an objective to provide for "the safe and efficient evacuation" of U.S. personnel and citizens "when their lives are endangered," 22 U.S.C. § 4802(b), including possibly deploying military forces, Exec. Order No. 13074, 63 Fed. Reg. at 7277, when doing so would be feasible without risking the safety of the evacuees and U.S. forces, MOA, A.1 and Appendix 1. But whether the relevant agencies have breached their purported duty to implement that objective depends on, among other things, "whether the complex military operations that might be required to accomplish an evacuation are necessary or appropriate," "whether an evacuation can be executed safely and efficiently," and whether the evacuation serves to further the foreign policy objectives of the United States—all of which the Judiciary is ill-equipped to assess. *Mobarez*, 187 F. Supp. 3d at 97.  For these reasons, the *Mobarez* court held that "there are no judicially discoverable or manageable standards for th[e] Court to apply when considering the extent to which the agencies have breached the duty of evacuation that the statute, executive order and

13

memorandum purportedly establish." *Id.* at 98.  The *Sadi* court did the same.  *See Sadi*, 2015 WL 3605106, at *6.

In sum, this case presents a nonjusticiable political question, and because "[j]usticiability is a jurisdictional issue," the Court lacks subject matter jurisdiction to proceed.  *Sadi*, 2015 WL 3605106, at *4; *see also Home-Owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 673 F. App'x 500, 505 (6th Cir. 2016) ("We first address justiciability because it is a threshold question of jurisdiction.").

## B. The Government's Evacuation Decisions Are Unreviewable Under the APA

The APA does not provide Plaintiffs a vehicle for challenging the Government's current posture regarding the evacuation of its citizens from Gaza.  The APA provides a right of review of agency action subject to certain limitations.  5 U.S.C. § 702(1).  One well-recognized limitation is when courts are asked to "'decide issues about foreign affairs, military policy and other subjects inappropriate for judicial action.'"  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999) (quoting 1 RECOMMENDATIONS AND REPORTS OF THE ADMINISTRATIVE CONFERENCE 191, 225).  Here, the Government's determinations regarding the evacuation of its citizens from a foreign war zone are unreviewable because they are quintessential matters of foreign affairs and military policy.

As discussed above, the political question doctrine precludes judicial review here because such review would intrude into foreign affairs and national security realms

14

committed to the political branches.  Section 702 is not an escape hatch from this jurisdictional bar.  *See Bruno*, 197 F.3d at 1158 & n.1 (describing the Department of Justice's support for an expansion of Section 702 because "judicial review could still be disposed of on grounds such as . . . the 'political question' doctrine") (citation omitted). Indeed, courts have long held that claims implicating sensitive matters of foreign affairs and military policy are not reviewable under the APA either by implication, *see, e.g.*, *id.* at 1158, or because such matters are committed to agency discretion, *see, e.g.*, *Scalise v. Thornburgh*, 891 F.2d 640 (7th Cir. 1989).[9]

APA review is also unavailable over matters "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  An agency action is committed to agency discretion by law when "[a] statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  This essentially restates the second *Baker* factor, which, as discussed above, favors the Government.  Again, Plaintiffs have not identified any legal authority that

---

[9] *See also Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) (recognizing "long-standing tradition" that "courts have been wary of second-guessing executive branch decision involving complicated foreign policy matters."); *Hondros v. U.S. Civ. Serv. Comm'n*, 720 F.2d 278, 293 (3d Cir. 1983) ("[A]ctions that implicate political, military, economic, or other choices not essentially legal [in] nature, . . . are not readily susceptible to judicial review, and are therefore candidates for actions committed to agency discretion."); *Curran v. Laird*, 420 F.2d 122, 128-29 (D.C. Cir. 1969) (holding that the President's decision to use foreign ships to transport military supplies to Vietnam was committed to agency discretion and not subject to APA review—"[T]he[se] particular issues call for determinations that lie outside sound judicial domain in terms of aptitude, facilities, and responsibility.").

would provide the Court a meaningful standard against which to judge the Government's exercise of discretion.  In both *Sadi* and *Mobarez*, the plaintiffs sought to rely on 22 U.S.C. § 4802, but the two courts determined that Section 4802 "provides absolutely no standards by which this Court could determine whether U.S. citizens' lives are endangered, whether their evacuation would be 'safe and efficient,' or by what means evacuation should be executed."  *Sadi*, 2015 WL 3605106, at *6; *see also Mobarez*, 187 F. Supp. 3d at 98 (finding "no judicially discoverable or manageable standards for this Court to apply when considering the extent to which the agencies have breached the duty of evacuation that the statute [§ 4802], executive order, and memorandum purportedly establish").  Nor did those courts find Executive Order 12656 or the MOA to provide meaningful standards for judicial review.  *Sadi*, 2015 WL 3605106, at *6.

Finally, a government-coordinated evacuation involves discretionary decisions regarding the commitment of resources that are necessarily unreviewable under the APA.  *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (decision whether, when, and how to commit resources using lump-sum appropriation is committed to agency discretion by law).  Here, the statute authorizes the Secretary of State to "make expenditures, from such amounts as may be specifically appropriated therefor, for unforeseen emergencies."  22 U.S.C. § 2671(a)(1).  Whether, how, and when this emergency authority is exercised, including with respect to the evacuation of U.S. citizens under 22 U.S.C. § 2671(b)(2), is committed to the Secretary of State's discretion, which includes his assessments about safety and risks.

### C. Plaintiffs Are Unlikely to Succeed on Their Failure to Act or Mandamus Claim

Despite characterizing their Complaint as one for a mandamus order, Plaintiffs do not allege a claim for mandamus, focusing instead on the closely-related APA claim to compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C § 706(1). *See, e.g.*, ECF No. 1, PageID.10–13, ¶¶ 36, 38 (discussing the Government's alleged "refusal to coordinate evacuation efforts, processes, and/or procedures of U.S. citizens from Gaza" and "failure to provide … the necessary equipment … to insure the security, safety, and well-being of U.S. citizens"). The standards for obtaining relief for agency inaction under the Mandamus Act and the APA are "essentially the same." *Fieger v. Gonzales*, No. 07-CV-10533-DT, 2007 WL 2351006, at *8 (E.D. Mich. Aug. 15, 2007), *aff'd sub nom. Fieger v. U.S. Atty. Gen.,* 542 F.3d 1111 (6th Cir. 2008). Plaintiffs are unlikely to succeed on either claim.

Mandamus under 28 U.S.C. § 1361 is a "drastic" remedy to be invoked only in "extraordinary" cases. *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (citation omitted). A writ of mandamus is available only if: (1) the party seeking the writ has a clear right to relief; (2) respondent has a clear duty to act; and (3) there is no other adequate remedy available to petitioner. *Id.* For a writ of mandamus to be warranted, "there must be a mandatory or ministerial obligation. If the alleged duty is discretionary or directory, the duty is not owed." *Id.* at 495 (citation omitted). Similarly, under the APA, 5 U.S.C. § 706(1), a court can compel agency action "only where a

17

plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  An act that requires an exercise of discretion cannot, therefore, be unlawfully withheld.  *Id.*

As discussed above, Plaintiffs identify no source of law that mandates the evacuation of private U.S. citizens from war zones.  As discussed above, any such decision is discretionary on the part of the Government.  In their TRO motion, Plaintiffs suggest that the Government owes them a duty to issue or execute a Noncombatant Evacuation Operation order ("NEO"), ECF No. 10, PageID.69–70, TRO Mot. ¶ 7, but again cite no authority for this claim.  NEOs are executed under the MOA between the State and Defense Departments.  However, as the Court in *Sadi* noted, the MOA does not require either agency to execute such an order; rather, it merely "describes their respective responsibilities *in the event that an evacuation is ordered*." *Sadi*, 2015 WL 3605106, at *6.  Because Plaintiffs identify no source of law that entitles them to compel the Government to issue an NEO, they are unlikely to succeed on their agency inaction claim, however it is construed.

### D. Plaintiffs Are Unlikely to Succeed on Their Arbitrary and Capricious Claim

Equally unlikely to succeed is Plaintiffs' arbitrary and capricious claim, 5 U.S.C. § 706(2)(A), because there is no final agency action.  A prerequisite to APA review is the existence of a "final agency" action.  5 U.S.C. § 704; *see Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188–89 (D.C. Cir. 2006) (noting that "the absence of final agency

action … cost [plaintiff] his APA cause of action").  To constitute final agency action, the action (1) "must mark the consummation of the agency's decisionmaking process" and (2) "must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Plaintiffs claim that the Government has undertaken a final agency action in its alleged decision not to evacuate U.S. citizens from Gaza.  ECF No.1, PageID.11, ¶ 37. They rest the claim on the assertion that the "State Department has advised both ACRL and ADC that it would not engage in evacuation efforts, process, and or processes to safely evacuate United States citizens in Gaza."  ECF No.1, PageID.15, ¶ 14.  But Plaintiffs' proffered evidence suggests the contrary.  Specifically, ACRL's Executive Director's declaration averred that "ACRL has been in regular contact with the State Department's Consular Affairs division, and that "responses received were consistently limited to advising the family to fill out the crisis form, *with no information provided regarding evacuation*."  *Id.* at PageId.16, Ex. 1, Decl. of Mariam Charara, ¶ 5 (emphasis added).  The declaration further states that ACRL had "numerous phone calls" with the U.S. Embassy in Jerusalem, and that the Embassy "indicated that they had not yet been provided with evacuation information."  *Id.* ¶ 6.  Moreover, the Embassy explained in an email that in light of "the *dynamic security situation* in Gaza, U.S. citizens should assess their own security when deciding whether to travel," that the "U.S. government personnel are not able to travel to Gaza or the Gaza periphery to assist *at this time*," and

that the "U.S. Embassies in Jerusalem and Cairo are working to determine departure options for U.S. citizens in Gaza." *Id.* (internal quotation marks omitted) (emphasis added).  Further, the email indicated that the Embassy would "continue to update [ACRL] of options *when we learn of them.*" *Id.* (emphasis added).  Such language is not indicative of final agency action, nor is it determinative of Plaintiffs' rights or obligations.  It simply reflects the dynamic security situation in Gaza.

Plaintiffs' TRO motion identifies another alleged final agency action—asserting that the Government's "refus[al] to provide ANY rational [explanation] for their failure to issue or execute a [NEO]," is "the very definition of arbitrary and capriciousness." ECF No. 10, PageID.70, TRO Mot. ¶ 7.  But again, there is no legal requirement to issue an NEO.  Nor is the Government under any legal obligation to explain its ongoing deliberations.  More importantly, no legal rights or obligations flow to Plaintiffs from such deliberations.  Because Plaintiffs cannot show that there is a final agency action, they are unlikely to succeed on their arbitrary and capricious claim.

Finally, even if there is a reviewable final agency action, Plaintiffs are still unlikely to succeed on their arbitrary and capricious claims.  The scope of review under the "arbitrary and capricious" standard is "narrow," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and "highly deferential," *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Off. of Foreign Assets Control*, 857 F.3d 913, 918 (D.C. Cir. 2017).  It is the "least demanding form of judicial review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).  "A court is not to ask

20

whether [an agency's] decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016).  Nor is the court to "substitute its [own] judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  Rather, the court's "role is limited to reviewing the administrative record to determine whether there exists a rational connection between the facts found and the choice made."  *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013) (citation omitted).

Here, the facts alleged by Plaintiffs show a rational connection between the current circumstances in Gaza and the current lack of an evacuation order for U.S. citizens there.  As Plaintiffs recognize, the Gaza Strip is an active war zone that is subject to an ongoing naval access restrictions, closed borders, and active fighting that is blocking routes to border crossings.  ECF No. 1, PageID.5-6, Comp. ¶¶ 12, 18.  Plaintiffs cite news articles identifying "[a]t least 12 other countries [that] are engaged in active efforts to evacuate their citizens from the war zone," *id.*, PageID.7, ¶ 22, but none suggests that those countries are evacuating their citizens out of Gaza.  Rather, all discuss the various countries' ability to transport their citizens out of Israel through Israel's currently operational airports.  Even since Plaintiffs filed their original TRO motion two days ago, news coverage about the situation in Gaza reflects significantly changing circumstances.  *See* Exs. 1, 3, 4.

Although Plaintiffs attempt to rely on past instances (involving evacuations occurring between 1975 and 2021 in different areas), where the Government evacuated

21

citizens from active war zones, ECF No. 1 PageID.8-9, Comp. ¶ 24, they make no attempt to explain the surrounding circumstances behind each effort, even assuming the Court is equipped to compare the circumstances to assess the reasonableness of the Government's current posture regarding evacuation.  The Court is not to substitute its own judgment for that of Executive Branch decisionmakers in addressing an arbitrary and capricious claim.  Accordingly, Plaintiffs' claim is not likely to succeed.

### E. Plaintiffs Are Unlikely to Succeed on Their Equal Protection Claim

Finally, Plaintiffs' equal protection claim likewise has no likelihood of success.[10] To state an equal protection claim, "a plaintiff must adequately plead that the Government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.*

---

[10] Plaintiffs cite 42 U.S.C. § 1983 and the Fourteenth Amendment for their equal protection claim.  ECF No. 1, PageID.9.  But neither is applicable to the Federal Government or federal actors. *Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 931 (6th Cir. 1987) (§ 1983); *Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 n.1 (6th Cir. 2018) (14th Amendment).  Instead, an equal protection challenge against the Federal Government is under the Due Process Clause of the Fifth Amendment. *See, e.g.*, *United States v. Vaello Madero*, 596 U.S. 159, 164 (2022).

Here, Plaintiffs allege that Palestinian Americans currently trapped in the Gaza Strip are treated worse than U.S. citizens in the same war zone—namely, Israel—and U.S. citizens who in the past received assistance to evacuate from other areas of armed conflict.  ECF No. 1, PageID.9–10, Compl. ¶¶ 28–32.  Both the Complaint and the TRO motion, however, couch legal conclusions as factual allegations.  Plaintiffs' own allegations confirm they are not similarly situated to U.S. citizens in Israel.  As Plaintiffs themselves allege, Gaza is subject to land, sea, and air access restrictions.  The news reports cited by Plaintiffs only discuss certain countries' efforts to arrange for transport out of Israel for their citizens.  And nothing suggests that the Government's current posture about the evacuation of U.S. citizens in Gaza is due to their Palestinian origin, as opposed to the difficulty and danger associated with such evacuation efforts.

Plaintiffs' assertion that they are similarly situated to previously-evacuated U.S. citizens in prior conflicts overseas is also conclusory; Plaintiffs offer nothing to show that the current conditions in Gaza are similar to those then-presented in the prior conflicts.  Accordingly, Plaintiffs have no likelihood of success in their equal protection claim.  *Cf. Sadi*, 2015 WL 3605106, at *8 (dismissing similar equal protection challenge for failure to state a claim).

## II.   THE OTHER INJUNCTION FACTORS WEIGH AGAINST ISSUANCE OF A TRO

Because Plaintiffs have no likelihood of success on the merits of their claims, the Court need not examine the other injunction factors.  *Valenti*, 853 F. Supp. 2d at 694

("[I]f 'there is simply no likelihood of success on the merits" that is usually 'fatal.'").
Even if the Court were to consider the other factors, issuance of a TRO is still
inappropriate. While the Government acknowledges the danger facing U.S. citizens in
Gaza, issuing an emergency injunction "based only on a possibility of irreparable harm
is inconsistent with [the Supreme Court's characterization of injunctive relief as an
extraordinary remedy." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Indeed,
the balance of harms decidedly tips against issuance of a TRO here. *Nken v. Holder*, 556
U.S. 418, 435 (2009) (the balance of harms and public interest factors "merge when the
Government is the opposing party").

The situation in Gaza is unpredictable and unstable. Neither Plaintiffs nor this
Court have "the wherewithal to discover what preparations are necessary before a large-
scale evacuation can occur, what the conditions … are or will be at any given time, or
what dangers may be posed to individuals involved in the evacuation effort." *Sadi*, 2015
WL 3605106, at *6. Indeed, as then Judge Kentanji Brown Jackson observed in
*Mobarez*, facts on the ground in a war zone can change quickly and an agency is
"indisputably entitled to alter [its] evaluation [of the propriety of evacuation] in response
to changing facts." 187 F. Supp. 3d at 98 n.5. An order compelling the Government
to conduct an evacuation operation now could subject Plaintiffs, other U.S. citizens in
Gaza, and those participating in such efforts to grave danger.

Moreover, the public has an interest in maintaining the constitutional separation
of powers under which the Judiciary is restrained "from inappropriate interference in

the business of the other branches of Government." *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990). Decisions regarding "whether the complex military operations that might be required to accomplish an evacuation are necessary or appropriate" or "whether an evacuation can be executed safely and efficiently under the circumstances" are "squarely within the political branches' bailiwick." *Mobarez*, 187 F. Supp. 3d at 97. Issuing the requested TRO in the circumstances here, which effectively would grant final relief to Plaintiffs, is decidedly against the public and government interest.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a TRO.

Dated: October 16, 2023                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General
                                           Civil Division

                                           DIANE KELLEHER
                                           Assistant Branch Director
                                           Federal Programs Branch

                                           JEAN LIN
                                           Special Litigation Counsel

                                           */s/ Jonathan D. Kossak*
                                           JONATHAN D. KOSSAK
                                           Trial Attorney (DC Bar No. 991478)
                                           Dep't of Justice, Federal Programs Branch
                                           1100 L Street, N.W., Washington, DC 20005
                                           Tel: (202) 305-0612
                                           Email: jonathan.kossak@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Jonathan D. Kossak
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
Dep't of Justice, Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 305-0612
Email: jonathan.kossak@usdoj.gov