## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

ZACHARIA A. ALARAYSHI, *et al.*

          Plaintiffs,

          v.

ANTHONY BLINKEN, *et al.*,

          Defendants.

_____

4:23-cv-12599-SDK-APP
Hon. Shalina D. Kumar
Mag. Judge Anthony P. Patti

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' EMERGENCY FIRST AMENDED COMPLAINT FOR MANDAMUS WITH REQUEST FOR INJUNCTIVE RELIEF

Defendants move this Court for dismissal for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) & (6). The undersigned certifies that counsel of record contacted Plaintiffs' counsel on October 23, 2023, via email, explaining the basis for dismissal. Plaintiffs' counsel responded, also by email, that Plaintiffs oppose the motion.

In support of this motion, Defendants rely on the accompanying brief and documents on file with this Court.

Dated: October 23, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

JEAN LIN
Special Litigation Counsel

_/s/ Jonathan D. Kossak_
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
Dep't of Justice, Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 305-0612
Email: jonathan.kossak@usdoj.gov

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

ZACHARIA A. ALARAYSHI, *et al.*

               Plaintiffs,

       v.

 

ANTHONY BLINKEN, *et al.*,

               Defendants.

_____

4:23-cv-12599-SDK-APP
Hon. Shalina D. Kumar
Mag. Judge Anthony P. Patti

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' EMERGENCY FIRST AMENDED COMPLAINT FOR
MANDAMUS WITH REQUEST FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND..................................................................................................................3

I.      AUTHORITIES CONCERNING EVACUATIONS ........................................3

II.     PLAINTIFFS' ALLEGATIONS AND MOTIONS...........................................5

LEGAL STANDARD ........................................................................................................7

ARGUMENT ......................................................................................................................9

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION........................9

        A.      Plaintiffs' Claims Raise A Nonjusticiable Political Question ....................9

        B.      Evacuation Deliberations Are Unreviewable Under the APA ................14

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6) ...........17

        A.      Plaintiffs' Failure-to-Act and Mandamus Claims Are Deficient..............17

        B.      Plaintiffs Fail to State an Arbitrary and Capricious Claim.........................18

        C.      Plaintiffs Fail to State an Equal Protection Claim ......................................22

III.    THE ORGANIZATIONAL PLAINTIFFS LACK STANDING....................23

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Acad. of Drs. of Audiology v. Int'l Hearing Soc'y,*
   237 F. Supp. 3d 644 (E.D. Mich. 2017) ...........................................25

*Am. Ins. Ass'n v. Garamendi,*
   539 U.S. 396 (2003) ...................................................................12

*Ana Leon T. v. Fed. Reserve Bank of Chi.,*
   823 F.2d 928 (6th Cir. 1987) .......................................................23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................23

*Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.,*
   13 F.4th 531 (6th Cir. 2021) .......................................................24

*Baker v. Carr,*
   369 U.S. 186 (1962) ...................................................................10

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
   528 F.3d 426, 430 (6th Cir. 2008) ..................................................8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................24

*Bennett v. Spear,*
   520 U.S. 154 (1997) ...................................................................19

*Carson v. U.S. Off. of Special Counsel,*
   633 F.3d 487 (6th Cir. 2011) .......................................................18

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
   333 U.S. 103 (1948) ...................................................................12

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.,*
   399 F.3d 651 n.10 (6th Cir. 2005) ..................................................8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,*
   648 F.3d 365 (6th Cir. 2011) .......................................................22

*Curran v. Laird,*
   420 F.2d 122 (D.C. Cir. 1969) .....................................................15

*Damnjanovic v. U.S. Dep't of Air Force*,
  135 F. Supp. 3d 601 (E.D. Mich. 2015) ..................................................7

*Elhady v. Pekoske*,
  835 F. App'x 83 (6th Cir. 2020)..........................................................17

*El-Shifa Pharm. Indus. Co. v. United States*,
  607 F. 3d 836 (D.C. Cir. 2010) ........................................................ 9, 12

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*,
  857 F.3d 913 (D.C. Cir. 2017) ............................................................21

*FERC v. Elec. Power Supply Ass'n*,
  577 U.S. 260 (2016) ............................................................................21

*Fieger v. Gonzales*,
  No. 07-CV-10533-DT, 2007 WL 2351006 (E.D. Mich. Aug. 15, 2007),
  *aff'd sub nom. Fieger v. U.S. Att'y Gen.*, 542 F.3d 1111 (6th Cir. 2008) ........17

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*,
  528 U.S. 167 (2000) ............................................................................24

*Gunn v. Minton*,
  568 U.S. 251 (2013) ..............................................................................8

*Haig v. Agee*,
  453 U.S. 280 (1981) ............................................................................11

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ............................................................................11

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ............................................................................16

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ............................................................................24

*Home-Owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.*,
  673 F. App'x 500 (6th Cir. 2016) ........................................................14

*Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*,
  943 F.2d 644 (6th Cir. 1991) ..............................................................25

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ........................................................................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ........................................................................................8

*Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*,
  104 F.3d 1349 (D.C. Cir. 1997) ....................................................................15

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ......................................................................................16

*Local 2388, AFGE (AFL-CIO) v. United States*,
  602 F.2d 574, 579 (3d Cir. 1979) .................................................................15

*Luftig v. McNamara*,
  373 F.2d 664 (D.C. Cir. 1967) ......................................................................12

*Madison-Hughes v. Shalala*,
  80 F.3d 1121 (6th Cir. 1996) ........................................................................17

*Matar v. Dichter*,
  500 F. Supp. 2d 284 (S.D.N.Y. 2007), *aff'd*, 563 F.3d 9 (2d Cir. 2009) ........8

*Mobarez v. Kerry*,
  187 F. Supp. 3d 85 (D.D.C. 2016) ........................................................*passim*

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................20

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
  711 F.3d 662 (6th Cir. 2013) ........................................................................21

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) .................................................................... 8, 9

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ........................................................................................18

*Oetjen v. Cent. Leather Co.*,
  246 U.S. 297 (1918) ......................................................................................11

*Online Merchants Guild v. Cameron*,
  995 F.3d 540 (6th Cir. 2021) ........................................................................25

*Reed Elsevier, Inc. v. Muchnick,*
    559 U.S. 154 (2010) ................................................................................8

*Saavedra Bruno v. Albright,*
    197 F.3d 1153 (D.C. Cir. 1999) ................................................. 14, 15

*Sadi v. Obama,*
    No. 15-11314, 2015 WL 3605106 (E.D. Mich. June 8, 2015) ..............*passim*

*Saldana v. Occidental Petroleum Corp.,*
    774 F.3d 544 (9th Cir. 2014) ....................................................................8

*Scalise v. Thornburgh,*
    891 F.2d 640 (7th Cir. 1989) ..................................................................15

*Schneider v. Kissinger,*
    412 F.3d 190 (D.C. Cir. 2005) ........................................................... 10, 11

*Taylor v. Dep't of Hum. Servs. of Mich.,*
    No. 09-CV-14639, 2010 WL 1257347 (E.D. Mich. Mar. 30, 2010) ........................ 7, 8

*Trudeau v. Fed. Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) ................................................................19

*United States v. Curtiss-Wright Exp. Corp.,*
    299 U.S. 304 (1936) ..............................................................................12

*Waskul v. Washtenaw Cnty. Cmty Mental Health,*
    900 F.3d 250 (6th Cir. 2018) ..................................................................25

*Zivotofsky v. Clinton,*
    566 U.S. 189 (2012) ......................................................................... 9, 12

## STATUTES

5 U.S.C. § 701 ..............................................................................................15

5 U.S.C. § 702 ..............................................................................................14

5 U.S.C. § 704 ..............................................................................................19

5 U.S.C. § 706 ...............................................................................7, 17, 18, 19

22 U.S.C. § 2671 ...........................................................................4, 13, 16

22 U.S.C. § 4802 ..................................................................................4, 13, 16

28 U.S.C. § 1361 ......................................................................................18

42 U.S.C. § 1983 ......................................................................................23

## REGULATIONS

Exec. Order No. 12,656,
    53 Fed. Reg. 47,491 (Nov. 18, 1988) .......................................... 5, 16

Exec. Order No. 13,074,
    63 Fed. Reg. 7277 (Feb. 9, 1988)................................................ 5, 13

## RULES

Fed. R. Civ. P. 12........................................................................................2, 3, 7

Fed. R. Evid. 201 ......................................................................................8

## UNITED STATES CONSTITUTION

U.S. Const. art. I, § 2................................................................................12

## OTHER AUTHORITIES

1 RECOMMENDATIONS AND REPORTS OF THE ADMINISTRATIVE CONFERENCE..........14

CBS News, Face the Nation, "Transcript: Secretary of State Antony Blinken
    on 'Face the Nation,'" (Oct. 22, 2023),
    https://www.cbsnews.com/news/antony-blinken-secretary-of-state-face-the-
    nation-transcript-2023-10-22 .............................................................1

President Biden, (@POTUS), X (Oct. 12, 2023, 12.54 PM),
    https://twitter.com/POTUS/status/1712512081449091175 ......................1

President Biden, (@POTUS), X (Oct. 14, 2023, 9.24 AM),
    https://twitter.com/POTUS/status/1713184081549173046 ......................1

The White House, Readout of President Joseph R. Biden, Jr.'s Call with Prime
    Minister Benjamin Netanyahu of Israel,
    https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/22/
    readout-of-president-joseph-r-biden-jr-s-call-with-prime-minister-benjamin-
    netanyahu-of-israel/ ..........................................................................11

U.S. Embassy in Israel, Security Alert #9 (Oct. 14, 2023),
     https://il.usembassy.gov/security-alert-9/ .....................................................................2

U.S. State Dep't (Oct. 12, 2023),
     https://www.state.gov/secretary-blinkens-travel-to-israel-jordan-qatar-
     saudi-arabia-the-united-arab-emirates-and-egypt/ ........................................................11

U.S. State Dep't, Press Statement (Oct. 12, 2023),
     https://www.state.gov/u-s-Government-to-assist-u-s-citizens
     -in-departing-israel/ ...........................................................................................................1

**INTRODUCTION**

Since Hamas's terrorist attack on Israel on October 7, 2023, the President has made clear that he has "no higher priority than the safety of Americans at home and around the world."[1]  Similarly, the President's National Security Advisor has said unequivocally that "[the Government's] goal is to ensure that every American who is in Gaza has safe passage out, and we will not rest until that happens."[2]  And the United States is working with the Governments of Israel, Egypt, and Jordan, as well as the United Nations, "to surge support to ease the humanitarian consequences of Hamas's attack," among other things.[3]

Gaza is now subject to active armed hostilities and to extensive land, sea, and air access restrictions.  In the midst of this fluid, volatile situation, two U.S. residents of Palestinian origin, and two civil rights organizations that lack standing, filed this suit to compel the Secretaries of State and Defense to take all necessary measures to evacuate

---

[1]  President Biden, (@POTUS), X (Oct. 12, 2023, 12.54 PM), https://twitter.com/POTUS/status/1712512081449091175.

[2]  ECF No. 13, PageID114, Ex. 1, F. Farrow, "US 'Dedicated' to Helping Americans Leave Gaza Through Egypt amid Israel-Hamas War: Sullivan," ABC News (Oct. 15, 2023); *see also* CBS News, Face the Nation, "Transcript: Secretary of State Antony Blinken on 'Face the Nation,'" (Oct. 22, 2023), https://www.cbsnews.com/news/antony-blinken-secretary-of-state-face-the-nation-transcript-2023-10-22/("We have several hundred Americans . . . who want to leave Gaza. . . .  This is something we're working, again, virtually every single day."); U.S. State Dep't, "Secretary Antony J. Blinken Remarks to the Press," (Oct. 20, 2023), https://www.state.gov/secretary-antony-j-blinken-remarks-to-the-press-13/.

[3]  President Biden, (@POTUS), X (Oct. 14, 2023, 9.24 AM), https://twitter.com/POTUS/status/1713184081549173046.

U.S. citizens from the Gaza Strip. But there is no role for the Court in the Government's efforts to secure the safe exit of U.S. citizens from Gaza. The Executive Branch is actively conducting negotiations with state actors in the region.[4] Strategic decisions about whether, when, and how to conduct an evacuation operation overseas are constitutionally committed to the political branches of the Government. Moreover, there are no judicially manageable standards for the Court to determine whether the Government has breached any purported duty of evacuation. Accordingly, Plaintiffs' suit presents a nonjusticiable political question, and this Court has no subject matter jurisdiction to proceed. Fed. R. Civ. P. 12(b)(1). Two district courts considering similar challenges concerning the evacuation of Americans from Yemen have come to this very conclusion. *See Mobarez v. Kerry*, 187 F. Supp. 3d 85 (D.D.C. 2016) (Ketanji Brown Jackson, J.); *Sadi v. Obama*, No. 15-11314, 2015 WL 3605106, at *4–7 (E.D. Mich. June 8, 2015) (Sean Cox, J.).

For many of the same reasons that Plaintiffs' claims present a political question, Administrative Procedure Act ("APA") review is unavailable because the decision

---

[4] *See* ECF No. 13–1, PageID.112–117, Ex. 1 (quoting National Security Advisor Jake Sullivan as stating, "We have been working around the clock. We have an entire dedicated team that is working on nothing but this: helping American citizens who are in Gaza be able to get safe passage through the border crossing to Egypt"); *see also* U.S. Embassy in Israel, Security Alert #9, https://il.usembassy.gov/security-alert-9/ (Oct. 14, 2023) (discussing that the "conflict between Israel and Hamas is ongoing, making identifying departure options for U.S. citizens [from Gaza] complex," that the Government is "working on potential options for departure from Gaza for U.S. citizens," and that "U.S. government officials [are] working 24/7 to try to assist").

concerning the evacuation of U.S. citizens from foreign war zones is committed to agency discretion.   Even if review were available, Plaintiffs' APA claims, whether characterized as challenges to agency action or inaction, fail to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   Plaintiffs have identified no legal authority requiring the Government to carry out an evacuation of U.S. citizens in Gaza, nor have they specified any final agency action regarding such an evacuation.

Further, Plaintiffs fail to state an equal protection claim.   Neither Plaintiffs' First Amended Complaint nor their mandamus and preliminary injunction motion provides any basis to find disparate treatment—the threshold element of an equal protection claim.   Plaintiffs' own allegations show that U.S. citizens trapped in Gaza are not similarly situated to those in Israel due to a real difference in armed hostilities and other practical limitations, such as the air, land, and sea access restrictions of Gaza.   Nor do Plaintiffs' conclusory allegations give rise to an inference that any alleged differential treatment of U.S. citizens in Gaza is due to their Palestinian origin.

For these reasons and those below, the Court should dismiss this case.

## BACKGROUND

## I.     AUTHORITIES CONCERNING EVACUATIONS

Plaintiffs cite no authority for the proposition that the Court can order "a swift, accommodating, and reasonable evacuation from Gaza."   ECF No. 15, PageID.165, Emergency First Am. Compl. for Mandamus with Request for Inj. Relief ("FAC") ¶ 49; *see also* ECF No. 16, PageID.200, Am. Emergency Mot. for Prelim. Inj., Writ of

Mandamus & Declaratory Relief ("Br.") 16 (urging compliance with unidentified "policy and directives"). In fact, there is none. The relevant statutes governing evacuations abroad concern only the planning, preparation, and use of resources. Specifically, the Secretary of State is charged with "develop[ing] and implement[ing] policies and programs to provide for the safe and efficient evacuation of United States Government personnel, dependents, and private United States citizens when their lives are endangered." 22 U.S.C. § 4802(b). This responsibility involves developing a model contingency plan, a mechanism to contact U.S. citizens, and a plan to coordinate communications regarding the whereabouts of U.S. citizens, as well as assessing transportation and communications resources in the evacuation areas. *Id.* § 4802(b)(1)–(4). And in case of evacuation, the Secretary of State is authorized to "make expenditures" subject to certain conditions, including that any expenditure must "serve to further the realization of foreign policy objectives." *Id.* § 2671(a)(1), (b)(1)(A). These statutory provisions do not dictate the conditions under which an evacuation must be conducted, and any decision about whether, how, and when to conduct an evacuation is left to the discretion of the Executive Branch.

Other authorities similarly do not specify when an evacuation must occur. Executive Order 12656 requires the Secretary of State, "under the direction of the President," to "[p]repare to carry out Department of State responsibilities in the conduct of the foreign relations of the United States during national security emergencies . . . including . . . [p]rotection or evacuation of United States citizens and

nationals abroad." Exec. Order No. 12,656 § 1301(2)(f), 53 Fed. Reg. 47,491, 47,503–04 (Nov. 18, 1988). In addition, the Secretary of Defense is to advise and assist the Secretary of State "in planning for the protection, evacuation, and repatriation of United States citizens in threatened areas overseas." *Id.* § 502(2), 53 Fed. Reg. at 47,498. Executive Order 13074 adds that the Secretary of Defense is "responsible for the deployment and use of military forces for the protection of" U.S. citizens, U.S. nationals, and other designated persons when evacuating them. 63 Fed. Reg. 7277 (Feb. 9, 1988). A subsequent Memorandum of Agreement ("MOA"), which sets forth the State and Defense Departments' agreement concerning their respective roles and responsibilities regarding the protection and evacuation of U.S. citizens and nationals and other designated persons, confirms that an evacuation decision is entirely discretionary and involves complex considerations. *See* MOA (July 14, 1998), ECF No. 13-2, PageID.118–141, Ex. 2. For example, the MOA provides that while "[t]he safety of U.S. citizens is of paramount concern . . . successful evacuation operations must take into account risks for evacuees and U.S. forces," MOA, Appendix 1, and should be carried out only when "necessary and feasible," MOA, A.1.

## II.   **PLAINTIFFS' ALLEGATIONS AND MOTIONS**

On October 13, 2023, in the midst of the daunting, fluid circumstances in the Gaza Strip, two individuals and two civil rights organizations filed an Emergency Complaint for Mandamus with Request for Injunctive Relief against the Secretaries of State and Defense. ECF No. 1, PageID.1–14. Plaintiffs appended to their Complaint

an emergency motion for a temporary restraining order ("TRO), ECF No. 1-1, PageID.22–27, which they later refiled, ECF No. 10, PageID.68–73.  After Defendants responded to the TRO motion, ECF No. 13, PageID.78–111, Plaintiffs filed an Emergency First Amended Complaint, ECF No. 15, PageID.153–69, and an Amended Emergency Motion for Preliminary Injunction, Writ of Mandamus and Declaratory Relief, ECF No. 16, PageID.177–205.  The Court later accepted the Government's TRO opposition as its opposition to Plaintiffs' motion for preliminary injunction and writ of mandamus.  *See* Minute Entry (Oct. 17, 2023).

In their First Amended Complaint, the individual Plaintiffs, Zakaria A. Alarayshi and Laila K. Alarayshi, allege that they are U.S. citizens of Palestinian origin who are currently trapped in the Gaza Strip under grave and dangerous circumstances—the Gaza Strip is an "active war zone" subject to "naval blockade," with its land borders with Egypt and Israel closed.  ECF No. 15, PageID.154, 157, 158, FAC ¶¶ 3, 12, 18. The organizational Plaintiffs, the Arab-American Civil Rights League ("ACRL") and American-Arab Anti-Discrimination Committee ("ADC"), allege that some of their U.S. citizen members are similarly trapped in Gaza.  *Id.*, PageID.154–55, FAC ¶¶ 4–6.

Count I of the First Amended Complaint raises an equal protection claim, alleging that Muslim Palestinian Americans in Gaza are being treated disparately from U.S. citizens in Israel, whom the Government is trying to evacuate, and from U.S. citizens who in the past were evacuated from other war zones.  *Id.*, PageID.163–64, FAC ¶¶ 35–43 (citing evacuations undertaken in prior years in other countries).  Count

Two asserts an arbitrary and capricious claim under the APA, 5 U.S.C. § 706(2)(A), but also alleges that the Government has unlawfully withheld and unreasonably delayed taking action to evacuate U.S. citizens, which is a separate cause of action under the APA, 5 U.S.C. § 706(1). ECF No. 15, PageID.164–65, FAC ¶¶ 45–49. Count III merely identifies the requested injunctive relief. *Id.* PageID.165–66, FAC ¶¶ 50–58. The First Amended Complaint seeks an order compelling the Government, "in the most expeditious manner available," to "use all resources at their disposal that are necessary and available . . . to evacuate U.S. citizens from Gaza and return them safely" to either the United States or another country outside of the war zone. *Id.*, PageID.167.

## LEGAL STANDARD

The Government moves to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "Rule 12(b)(1) allows dismissal for 'lack of jurisdiction over the subject matter,' while Rule 12(b)(6) addresses the failure to state a claim upon which relief may be granted." *Damnjanovic v. U.S. Dep't of Air Force*, 135 F. Supp. 3d 601, 603-04 (E.D. Mich. 2015). "When a defendant moves for a motion to dismiss under both Rule 12(b)(1) and (b)(6), the court should consider the 12(b)(1) motion first because the 12(b)(6) motion is moot if subject matter jurisdiction does not exist." *Id.* at 604 (quoting *Taylor v. Dep't of Hum. Servs. of Mich.*, No. 09-CV-14639, 2010 WL 1257347, at *1-2 (E.D. Mich. Mar. 30, 2010)).

A court's subject matter jurisdiction refers to its "statutory or constitutional power to adjudicate the case" before it. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161

(2010) (citation omitted).  Federal courts are courts of limited jurisdiction.  *Gunn v. Minton*, 568 U.S. 251, 256 (2013).  A court must presume that an action "lies outside [its] limited jurisdiction, … and the burden of establishing the contrary rests upon" the party invoking federal jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

Dismissal pursuant to Rule 12(b)(6) is appropriate where the pleadings have failed to state a claim upon which relief can be granted.  In reviewing a Rule 12(b)(6) motion, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff.  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir. 2011).  However, the court need not accept as true any "conclusory legal allegations that do not include specific facts necessary to establish the cause of action."  *Id.*  On a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).[5]

---

[5] In considering the Government's motion to dismiss, the Court may take judicial notice of government officials' public statements.  *See Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 (9th Cir. 2014) (taking judicial notice of government presentations to Congress); *Matar v. Dichter*, 500 F. Supp. 2d 284, 295 (S.D.N.Y. 2007) ("For purposes of the political question inquiry, the Court may take judicial notice of the 'official policy and opinion' of the United States and Israel.") (citation omitted)), *aff'd*, 563 F.3d 9 (2d Cir. 2009); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1, 662 n.10 (6th Cir. 2005) (discussing Fed. R. Evid. 201).

## ARGUMENT

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.  Plaintiffs' Claims Raise A Nonjusticiable Political Question

The Court lacks jurisdiction to resolve the current dispute because, as two courts have found in strikingly similar circumstances, the dispute presents a "[q]uintessential [p]olitical [q]uestion." *Mobarez*, 187 F. Supp. 3d at 92; *see Sadi*, 2015 WL 3605106, at *7. The political question doctrine, which is premised on separation of powers principles, "recognizes that 'some [q]uestions, in their nature political, are beyond the power of the courts to resolve.'" *Mobarez*, 187 F. Supp. 3d at 90 (quoting *El-Shifa Pharm. Indus. Co. v. United States*, 607 F. 3d 836, 840 (D.C. Cir. 2010) (en banc)).  Accordingly, the doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  A controversy "involves a political question . . . where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; *or* a lack of judicially discoverable and manageable standards for resolving it.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) (citation omitted) (emphasis added); *see also Baker v. Carr*, 369 U.S. 186 (1962).[6]  Suits seeking to

---

[6] *Zivotofsky* mentions only two of the six factors set forth in *Baker*. *See Baker*, 369 U.S. at 217 (identifying six factors).  It is unnecessary to assess the other four factors because this case plainly satisfies the first two, and the satisfaction of one factor precludes judicial review. *See id.*; *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005).

compel the Government to conduct complex evacuation operations overseas fall squarely within the political question doctrine. *Mobarez*, 187 F. Supp. 3d at 92; *Sadi*, 2015 WL 3605106, at *7.

First, Plaintiffs' claims involve matters that are textually committed to the political branches of the Government. Plaintiffs seek an order from this Court compelling the Executive Branch to use all "necessary" and "available" means, including "the deployment of military ships, vessels and airplanes," to evacuate U.S. citizens from Gaza. ECF No. 15, PageID.167, FAC. That is an invitation to override the Executive Branch's policy-based judgments in the midst of ongoing diplomatic negotiations and active hostilities on the ground. Following Hamas's recent terrorist attack on Israel and in the face of an escalating humanitarian crisis, the President and the Secretary of State have been engaged in sensitive diplomatic discussions to advance the foreign policy and national security interests of the United States, which include addressing the safety and security of U.S. citizens. The Secretary of State, for example, traveled to Israel, Jordan, Qatar, Bahrain, Saudi Arabia, the United Arab Emirates, and Egypt to, among other things, "engage regional partners on efforts to help prevent the conflict from spreading, secure the immediate and safe release of hostages, and identify mechanisms for the protection of civilians."[7] The President too has visited the region and has made numerous statements where he reinforced the Government's continuing

---

[7] U.S. State Dep't, https://www.state.gov/secretary-blinkens-travel-to-israel-jordan-qatar-saudi-arabia-the-united-arab-emirates-and-egypt/ (Oct. 12, 2023).

efforts to secure the safe return of U.S. citizens.[8]  Whether, when, and how to evacuate U.S. citizens in Gaza is one of many potential lines of effort the Executive Branch is currently considering.[9]  Such decisions are matters "intimately related to foreign policy and national security," *Haig v. Agee*, 453 U.S. 280, 292 (1981), and thus, are "largely immune from judicial inquiry or interference," *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952); *see also Haig*, 453 U.S. at 292 (foreign policy and national security matters are "rarely proper subjects for judicial intervention").

This is so because "[t]he conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'— departments of the government."  *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918); *see also Schneider*, 412 F.3d at 194–95 (discussing the Constitution's allocation of foreign affairs and national security powers to the legislative and execution branches).  It has long been recognized that "[t]he President is the sole organ of the nation in its external relations, and its sole representative with foreign nations."  *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) (citation omitted); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) ("[T]he historical gloss on the 'executive Power'

---

    [8] *See, e.g.*, The White House, "Readout of President Joseph R. Biden, Jr.'s Call with Prime Minister Benjamin Netanyahu of Israel," https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/22/readout-of-president-joseph-r-biden-jr-s-call-with-prime-minister-benjamin-netanyahu-of-israel/ (Oct. 22, 2023) ("The leaders discussed ongoing efforts to secure the release of all the remaining hostages taken by Hamas – including U.S. citizens – and to provide for safe passage for U.S. citizens and other civilians in Gaza who wish to depart.").

    [9] *See supra* n.2.

vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations.'" (citation omitted)).  When diplomacy fails, it is also the President who has the constitutionally vested authority as Commander in Chief to deploy the military.  *See* U.S. Const. art. I, § 2, cl. 1; *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109–10 (1948).

To address Plaintiffs' claims here, therefore, would contravene the political question doctrine, straying far beyond the "familiar judicial exercise" of determining how a statute should be interpreted or whether it is constitutional.  *Zivotofsky*, 566 U.S. at 196; *see also Luftig v. McNamara*, 373 F.2d 664, 665-66 (D.C. Cir. 1967) ("It is difficult to think of an area less suited for judicial action than . . . the use and disposition of military power; these matters are plainly the exclusive province of Congress and the Executive.").  In other words, as then-Judge Ketanji Brown Jackson put it, "it is effectively impossible to decide" whether the Government breached its alleged evacuation duties "without invading 'a textually demonstrable constitutional commitment' to another branch (the first *Baker* test)."  *Mobarez* 187 F. Supp. 3d at 92 (quoting *El-Shifa*, 607 F.3d at 841); *see also Sadi*, 2015 WL 3605106, at *6 ("These fact-based judgments have been committed to the discretion of the Executive branch, to be made on a case-by-case basis.").

Second, there are no judicially manageable standards for determining whether the Government has breached any purported duty to conduct an evacuation operation in the circumstances here.  As discussed, no legal authority provides any standards to

determine whether and when an evacuation must occur.  The relevant statutes and Executive Orders merely concern planning, preparation, and resource commitments, including, for example, the condition that expenditure for evacuation must "serve to further the realization of foreign policy objectives."  22 U.S.C. § 2671(b)(1)(A).  Nor does the MOA between the State and Defense Departments on evacuations offer any such standards, even assuming the MOA has the force of law, which it does not.

The relevant statutes, Executive Orders, and the MOA do reflect an objective to provide for "the safe and efficient evacuation" of U.S. personnel and citizens "when their lives are endangered," 22 U.S.C. § 4802(b), including possibly deploying military forces, Exec. Order No. 13074, 63 Fed. Reg. at 7277, when doing so would be feasible without risking the safety of the evacuees and U.S. forces, MOA, A.1 and Appendix 1. But whether the Government has breached its purported duty to implement that objective depends on, among other things, "whether the complex military operations that might be required to accomplish an evacuation are necessary or appropriate," "whether an evacuation can be executed safely and efficiently," *Mobarez*, 187 F. Supp. 3d at 97, and whether the evacuation serves to further the "foreign policy objectives" of the United States, 22 U.S.C. § 2671(b)(1)(A)—all of which the Judiciary is ill-equipped to assess.  For these reasons, the *Mobarez* court held that "there are no judicially discoverable or manageable standards for th[e] Court to apply when considering the extent to which the agencies have breached the duty of evacuation that

the statute, executive order, and memorandum purportedly establish." *Mobarez*, 187 F.

Supp. 3d at 98.  The *Sadi* court did the same.  *See Sadi*, 2015 WL 3605106, at *6.

In sum, this case presents a nonjusticiable political question, and because

"[j]usticiability is a jurisdictional issue," the Court lacks subject matter jurisdiction to

proceed.  *Id.* at *4; *see also Home-Owners Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 673 F.

App'x 500, 505 (6th Cir. 2016) ("We first address justiciability because it is a threshold

question of jurisdiction.").

## B. Evacuation Deliberations Are Unreviewable Under the APA

The APA does not provide Plaintiffs a vehicle for challenging the Government's

current posture regarding the evacuation of U.S. citizens from Gaza.  The APA

provides a right of review of agency action subject to certain limitations.  5 U.S.C.

§ 702(1).  One well-recognized limitation is when courts are asked to "'decide issues

about foreign affairs, military policy and other subjects inappropriate for judicial

action.'"  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999) (quoting 1

RECOMMENDATIONS AND REPORTS OF THE ADMINISTRATIVE CONFERENCE 191, 225).

Deliberations regarding the evacuation of U.S. citizens from a foreign war zone are

quintessential matters of foreign affairs and military policy and thus, are unreviewable.

As discussed above, the political question doctrine precludes judicial review here

because such review would intrude into foreign affairs and national security realms

committed to the political branches.  Section 702 is not an escape hatch from this

jurisdictional bar.  *See id.* at 1158 & n.1 (describing the Department of Justice's support

for an expansion of Section 702 because "judicial review could still be disposed of on grounds such as . . . the 'political question' doctrine") (citation omitted).  Indeed, courts have long held that claims such as these, directly implicating sensitive matters of foreign affairs and military policy, are not reviewable under the APA either by implication, *see, e.g.*, *id.* at 1158, or because such matters are committed to agency discretion, *see, e.g.*, *Scalise v. Thornburgh*, 891 F.2d 640 (7th Cir. 1989).[10]

APA review is also unavailable over matters "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  An agency action is committed to agency discretion by law when "[a] statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Plaintiffs have not identified any legal authority—and in fact, there is none— that would provide the Court a meaningful standard against which to judge the Government's actions.  In both *Sadi* and *Mobarez*, the plaintiffs sought to rely on 22

---

[10] *See also Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) (recognizing "long-standing tradition" that "courts have been wary of second-guessing executive branch decision involving complicated foreign policy matters."); *Local 2388, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 579 (3d Cir. 1979) ("The existence of broad discretionary power in an agency often suggests that the challenged decision is the product of political, military, economic, or managerial choices that are not really susceptible to judicial review. Indeed, given the separation of powers between the judiciary and the other branches of government, it would appear unseemly in such circumstances for a court to substitute its judgment for that of an executive or agency official"); *Curran v. Laird*, 420 F.2d 122, 128–29 (D.C. Cir. 1969) (holding that the government's decision to use foreign ships to transport military supplies to Vietnam was committed to agency discretion by statute and not subject to APA review—"[T]he[se] particular issues call for determinations that lie outside sound judicial domain in terms of aptitude, facilities, and responsibility.").

U.S.C. § 4802, but the two courts determined that Section 4802 "provides absolutely no standards by which this Court could determine whether U.S. citizens' lives are endangered, whether their evacuation would be 'safe and efficient,' or by what means evacuation should be executed." *Sadi*, 2015 WL 3605106, at *6; *see also Mobarez*, 187 F. Supp. 3d at 98 (finding "no judicially discoverable or manageable standards for this Court to apply when considering the extent to which the agencies have breached the duty of evacuation that the statute [§ 4802], executive order, and memorandum purportedly establish"). Nor did those courts find Executive Order 12656 or the MOA to provide meaningful standards for judicial review. *Sadi*, 2015 WL 3605106, at *6.

Finally, a government-coordinated evacuation involves discretionary decisions regarding the commitment of resources that are necessarily unreviewable under the APA. *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (decision whether, when, and how to commit resources using lump-sum appropriation is committed to agency discretion by law). Here, the Secretary of State is authorized to "make expenditures, from such amounts as may be specifically appropriated therefor, for unforeseen emergencies." 22 U.S.C. § 2671(a)(1). Whether, how, and when this emergency authority is exercised, including with respect to the evacuation of U.S. citizens, under 22 U.S.C. § 2671(b)(2), is committed to the Secretary of State's discretion, which includes his assessments about safety and risks.

In sum, because Plaintiffs' APA claims are unreviewable, the Court "must decline to exercise jurisdiction over [them]." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1124 (6th

16

Cir. 1996); *see also Elhady v. Pekoske*, 835 F. App'x 83, 87 n.1 (6th Cir. 2020) (Nalbandian, J., concurring) ("The [APA] normally strips our jurisdiction to review agency action committed to agency discretion by law.") (citation omitted).

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6)

### A.   Plaintiffs' Failure-to-Act and Mandamus Claims Are Deficient

Despite characterizing their First Amended Complaint as one for a writ of mandamus, Plaintiffs do not allege a mandamus claim, focusing instead on the closely related APA claim to compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C § 706(1). *See, e.g.*, ECF No. 15, PageID.164–65, FAC ¶¶ 46, 48 (discussing the Government's alleged "refusal to coordinate evacuation efforts, processes, and/or procedures of U.S. citizens from Gaza" and "fail[ure] to provide . . . the necessary equipment . . . to insure the security, safety, and well-being of U.S. citizens"). The standards for obtaining relief for agency inaction under the Mandamus Act and the APA are "essentially the same." *Fieger v. Gonzales*, No. 07-CV-10533-DT, 2007 WL 2351006, at *8 (E.D. Mich. Aug. 15, 2007), *aff'd sub nom. Fieger v. U.S. Att'y. Gen.*, 542 F.3d 1111 (6th Cir. 2008). Plaintiffs fail to state a claim under either statute.

Mandamus under 28 U.S.C. § 1361 is a "drastic" remedy to be invoked only in "extraordinary" cases. *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (citation omitted). A writ of mandamus is available only if: (1) the party seeking the writ has a clear right to relief; (2) respondent has a clear duty to act; and (3) there is no other adequate remedy available to petitioner. *Id.* For a writ of mandamus to be

warranted, "there must be a mandatory or ministerial obligation." *Id.* at 495 (citation omitted). "If the alleged duty is discretionary or directory, the duty is not owed." *Id.* Similarly, under the APA, 5 U.S.C. § 706(1), a court can compel agency action "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). An act that requires an exercise of discretion cannot, therefore, be unlawfully withheld. *Id.*

As discussed above, Plaintiffs identify no source of law that mandates the evacuation of private U.S. citizens from war zones, and any such decision is left to the judgment of the Executive Branch. Plaintiffs suggested in their TRO motion that the Government has a duty to execute a Noncombatant Evacuation Operation ("NEO"). ECF No. 10, PageID.69–70, TRO Mot. ¶ 7; *see also* ECF No. 15, Page ID.155–56, FAC ¶¶ 8–9 (discussing NEOs). NEOs are executed under the MOA between the State and Defense Departments. However, as the Court in *Sadi* noted, the MOA does not require either agency to execute NEOs; rather, it merely "describes their respective responsibilities *in the event that an evacuation is ordered*." *Sadi*, 2015 WL 3605106, at *6.

Because Plaintiffs identify no source of law that entitles them to an order compelling the Government to evacuate U.S. citizens from Gaza, their claim under either 5 U.S.C. § 706(1) or the Mandamus Act should be dismissed.

### B. Plaintiffs Fail to State an Arbitrary and Capricious Claim

Plaintiffs' allegations of arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A) also fail to state a claim because they do not identify a "final agency" action,

which is a prerequisite to APA review.  5 U.S.C. § 704; *see Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188–89 (D.C. Cir. 2006) ("[T]he absence of final agency action . . . cost [plaintiff] his APA [claim]").  To constitute final agency action, the action (1) "must mark the consummation of the agency's decisionmaking process" and (2) "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Plaintiffs claim that the Government has undertaken a final agency action in its alleged decision not to evacuate U.S. citizens from Gaza.  ECF No.15, PageID.164, FAC ¶ 47.  They rest the claim on the assertion that the "State Department has advised both ACRL and ADC that it would not engage in evacuation efforts, procedures, and[/]or processes to safely evacuate United States citizens in Gaza." *Id.*, PageID.157, FAC ¶ 14.  But Plaintiffs' exhibits suggest the contrary.  Specifically, ACRL's Executive Director's sworn statement averred that "ACRL has been in regular contact with the State Department's Consular Affairs division," and that "responses received were consistently limited to advising the family to fill out the crisis form, *with no information provided regarding evacuation.*" *Id.* at PageID.171, FAC Ex. 1, Sworn Stmt. of Mariam Charara ¶ 5 (emphasis added).  The statement further said that ACRL had "numerous phone calls" with the U.S. Embassy in Jerusalem, and that the Embassy "indicated that they had not yet been provided with evacuation information." *Id.* ¶ 6.  Moreover, according to the statement, the Embassy explained in an email that in light of "the *dynamic security situation* in Gaza, U.S. citizens should assess their own security when

deciding whether to travel," that the "U.S. government personnel are not able to travel to Gaza or the Gaza periphery to assist *at this time*," and that the "U.S. Embassies in Jerusalem and Cairo are working to determine departure options for U.S. citizens in Gaza." *Id.*, PageID.171 (citation omitted) (emphasis added). Further, the email indicated that the Embassy would "continue to update [ACRL] of options when we learn of them." *Id.* Such language is not indicative of final agency action, nor is it determinative of Plaintiffs' rights or obligations. It simply reflects the dynamic security situation in Gaza.[11]

Further, Plaintiffs fail to state an arbitrary and capricious claim. The scope of review under the "arbitrary and capricious" standard is "narrow," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and "highly deferential," *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 918 (D.C. Cir. 2017) (citation omitted). "A court is not to ask whether [an agency's] decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). Nor is the court to "substitute its [own]

---

[11] Plaintiffs' TRO motion identified another alleged final agency action— asserting that the Government's "refus[al] to provide ANY rational [explanation] for their failure to issue or execute a [NEO]," is "the very definition of arbitrary and capriciousness." ECF No. 10, PageID.70, TRO Mot. ¶ 7. But Plaintiffs make no mention of this in their First Amended Complaint or their motion for preliminary injunction and writ of mandamus, so they have waived this argument. In any event, there is no legal requirement to execute NEOs, nor is the Government under any legal obligation to explain its ongoing deliberations. More importantly, no legal rights or obligations flow to Plaintiffs from such deliberations.

judgment for that of the agency." *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013) (citation omitted). Rather, the court's "role is limited to reviewing the administrative record to determine whether there exists a rational connection between the facts found and the choice made." *Id.* (citation omitted).

Here, the facts alleged by Plaintiffs show a rational connection between the current circumstances in Gaza and the current lack of an evacuation operation for U.S. citizens there. As Plaintiffs recognize, there is an active armed conflict in the Gaza Strip, which is subject to an ongoing naval access restrictions, closed borders, and active fighting that is blocking routes to border crossings. ECF No. 15, PageID.154, 157, 158, FAC ¶¶ 3, 12, 18. Plaintiffs cite news articles identifying "[a]t least 12 other countries [that] are engaged in active efforts to evacuate their citizens from the war zone," *id.*, PageID.159-60, FAC ¶ 22, but none suggests that those countries are evacuating their citizens out of Gaza. Rather, all discuss the various countries' ability to transport their citizens out of Israel through Israel's currently operational airports. Indeed, the news coverage about the situation in Gaza reflects changing circumstances on a daily basis.

Although Plaintiffs attempt to rely on past instances involving war-zone evacuations occurring over the last 50 years in different areas, ECF No. 15, PageID.160–61, FAC ¶¶ 24–25, they make no attempt to explain the surrounding circumstances behind each effort. Nor is the Court equipped to compare the circumstances to assess the reasonableness of the Government's current posture

regarding evacuation.  The Court therefore may not and should not substitute its own judgment for that of Executive Branch decisionmakers.  Accordingly, the Court should dismiss Plaintiffs' arbitrary and capricious claim.

### C. Plaintiffs Fail to State an Equal Protection Claim

Finally, Plaintiffs fail to state an equal protection claim under the Fifth Amendment.  To state such a claim, "a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).  The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.* (citation omitted).

Here, Plaintiffs allege that Palestinian Americans currently trapped in the Gaza Strip are being treated worse than U.S. citizens in the same purported war zone—namely, Israel—and U.S. citizens who in the past received assistance to depart from other areas of armed conflict.  ECF No. 15, PageID.163, FAC ¶¶ 35–41.  But Plaintiffs' allegations actually confirm that the situation in Gaza is significantly different from that in Israel.  As Plaintiffs themselves allege, Gaza is subject to land, sea, and air access restrictions.  ECF No. 15, PageID.154, 157, 158, FAC ¶¶ 3, 12, 18.  Indeed, the news reports cited by Plaintiffs only discuss certain countries' efforts to arrange for transport

22

out of Israel for their citizens.  *Id.*, PageID.159, FAC ¶ 22.  And nothing suggests that the Government's current posture about the evacuation of U.S. citizens in Gaza is due to those citizens' Palestinian origin, as opposed to the difficulty and danger associated with such evacuation efforts, among other impediments.

Plaintiffs' assertion that they are similarly situated to previously-evacuated U.S. citizens in prior conflicts overseas likewise fails to state a claim.  The First Amended Complaint contains only "bald allegations" and "bare assertions" that the current conditions in Gaza are similar to those then-presented in the prior conflicts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  "Because the allegations are conclusory," they are "not entitled to be assumed true."  *Id.*  Plaintiffs, therefore, fail to state an equal protection claim on this basis.  *See Sadi*, 2015 WL 3605106, at *8 (finding nearly identical allegations fail to state an equal protection claim because the plaintiffs "alleged no facts showing that they are similar to previously-evacuated U.S. citizens, or that the current conditions in Yemen are similar to the conditions then-presented in those other countries").[12]

## III.   THE ORGANIZATIONAL PLAINTIFFS LACK STANDING

Finally, even if the Court concludes that the individual Plaintiffs can overcome all of these jurisdictional and pleading deficiencies, it should dismiss the organizational Plaintiffs because they have neither associational nor organizational standing.

---

[12] In addition to the Fifth Amendment, Plaintiffs cite 42 U.S.C. § 1983 for their equal protection claim, ECF No. 15, PageID.163, but Section 1983 is not applicable to federal actors, *Ana Leon T. v. Fed. Reserve Bank of Chi.*, 823 F.2d 928, 931 (6th Cir. 1987).

An "essential" requirement for Article III jurisdiction is that "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  When an organization brings suit, it may establish standing on its own or associational standing on behalf of its members.  An organizational plaintiff bears the burden of "clearly alleging facts demonstrating standing" under the same plausibility standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (citation omitted).

"An association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 181 (2000).  To satisfy the first prong of this test, an "organization must [ ] identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543.  An organization may not achieve associational standing by identifying their membership in the abstract – it must actually name a member who would have standing to bring the action himself/herself. *Waskul v. Washtenaw Cnty. Cmty Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018).  Here, the First Amended Complaint fails to identify by name a single member of either ADC

or ACRL who is a U.S. citizen trapped in Gaza. For that reason, both ADC and ACRL should be dismissed from this case for lack of standing.

The organizational Plaintiffs also fail to allege that they have standing in their own right. To "establish direct standing to sue in its own right, an organizational plaintiff … must demonstrate that the 'purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.'" *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) (quoting *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991)). Here, neither ADC nor ACRL make any resource-related allegations. Rather, they allege they are suffering the same injuries as their members. *See* ECF No. 15, PageID.154-55, FAC ¶¶ 5, 7 (alleging that both the organizational plaintiffs and their members "have experienced and will continue to suffer discrimination, differential and disparate treatment"). That is insufficient to establish the organizational plaintiffs' own standing. *See Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 649 (E.D. Mich. 2017) (organizational plaintiff had no standing because there were "no allegations in the complaint to support" a diversion of resources theory). Accordingly, the Court should dismiss the organizational Plaintiffs from this suit.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint.

Dated: October 23, 2023                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

JEAN LIN
Special Litigation Counsel

*/s/ Jonathan D. Kossak*
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
Dep't of Justice, Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 305-0612
Email: jonathan.kossak@usdoj.gov

26

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Jonathan D. Kossak*
JONATHAN D. KOSSAK
Trial Attorney (DC Bar No. 991478)
Dep't of Justice, Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 305-0612
Email: jonathan.kossak@usdoj.gov